Frederick M. Maroon, III and Shirley Maroon v. Commissioner.
Maroon v. Commissioner
Docket No. 3439-70.
United States Tax Court
T.C. Memo 1972-128; 1972 Tax Ct. Memo LEXIS 129; 31 T.C.M. (CCH) 570; T.C.M. (RIA) 72128; June 12, 1972
Lawrence G. Ropes, Jr., 1102 Ponce de Leon Blvd., Coral Gables, Fla., for the petitioners. Robert W. Goodman, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined a deficiency in petitioners' Federal income tax for the calendar year 1965 in the amount of $7,122.11. The issue for decision is whether petitioners overstated the business purchases of Jet One Stop in 1965. Findings of Fact Some of the facts were stipulated and are so found. Petitioners jointly filed their Federal income tax return for the taxable year 1965 with the district *130 director of internal revenue in Jacksonville, Florida. At the time the petition in this case was filed petitioners resided in Maitland, Florida. Shirley Maroon is a petitioner herein solely because she filed a joint return with her husband Frederick for 1965; Frederick will hereinafter be referred to as the petitioner. During 1965 petitioner operated a sole proprietorship named Jet One Stop which sold phonograph records to the owners of juke boxes in and around Miami, Florida. Prior to 1965 petitioner had been one of two partners who together owned Jet One Stop, but he bought out the other partner effective January 1, 1965. On December 28, 1965, petitioner incorporated his business under the laws of Florida as Jet One Stop, Inc. Petitioner kept his business records by the single entry method, and during 1965 he kept a single entry record of his cash disbursements for purchases of merchandise for Jet One Stop. This record of cash disbursements was adjusted by adding accounts payable at the close of the taxable year and subtracting accounts payable at the beginning of the year. In computing his gross profit on Schedule C of his 1965 individual income tax return petitioner included *131 as part of his cost of goods sold for the year business purchases totaling $114,892.75. It is conceded that this figure is incorrect, because although petitioner added accounts payable at the end of 1965 he failed to subtract accounts payable at the beginning of 1965. Respondent determined petitioner's business purchases for 1965 to be $82,232.65. However, in addition to this, petitioner made other purchases through indirect means totaling $4,275.80. Petitioner accomplished these purchases by issuing checks payable to third parties or to cash, and then by having the third parties purchase merchandise and deliver it to him. This practice was necessary because an important record supplier in the Miami area refused to sell directly to petitioner. Nearly every check so issued carried a notation designating its purpose as the purchase of merchandise. The invoices were kept by the third parties who bought petitioner's records as part of their own purchases. One of petitioner's suppliers during 1965 was Topp's Record Distributing Company, Inc. Petitioner's records indicate that at the beginning of 1965 he owed Topp's $16,092.72 for merchandise previously purchased and that this item had *132 been added to purchases as an account payable at the close of the partnership's (Jet One Stop) 1964 year. During 1965 petitioner made purchases from Topp's totaling $4,670.65, issued checks payable to Topp's totaling $3,553.28, and received credit memoranda for merchandise returned to Topp's totaling more than $12,400. The balance payable to Topp's at the end of 1965 was $4,763.66. Petitioner's sales invoices and purchase invoices for 1965 reveal an average sales price per record of 63.86 cents and an average cost per record of 46.7 cents. One of petitioner's former employees, who now operates four record shops of his own, testified that gross profit averaged about 23 percent of gross sales in businesses comparable to petitioner's. Petitioner's total gross sales for 1965 from Jet One Stop were $132,163.14. Petitioner's accounts payable for merchandise purchased at the beginning of 1965 totaled $40,364.58. Opinion At issue herein is the correct amount of business purchases to be used in computing petitioner's gross profit from Jet One Stop, a record distributorship which he operated as a sole proprietorship during 1965. Petitioner concedes that the amount ($114,892.75) of such *133 purchases which he reported on his 1965 tax return was incorrect. However, petitioner raises two objections to respondent's determination that business purchases totaled only $82,232.65. These objections raise issues solely of fact, and petitioner has the burden of proving that respondent's determination was incorrect. Petitioner first contends that respondent erred in excluding from purchases the 572 amount of $4,275.80. The amount in question is comprised of checks which were issued payable to third parties or to cash and then used by third parties to purchase records and deliver them to petitioner. This practice was necessary because one of the largest record suppliers in the Miami area refused to deal directly with petitioner. The invoices were kept by the third parties who bought petitioner's records as part of their own purchases. Respondent argues that petitioner has not adequately substantiated that he actually followed this practice. However, petitioner adduced credible testimony by himself and a former employee, explaining both the need for this practice and how it was executed. Also, there were notations on nearly every check designating them as payments for merchandise. *134 We hold that petitioner has met his burden of proof with respect to this contention and that this amount must be included in business purchases. Petitioner's second contention is that the figure used by respondent to represent petitioner's accounts payable at the beginning of 1965 should be reduced by $16,092.72. Petitioner concedes that the amount of accounts payable at the beginning of the year must be subtracted from the sum of (1) purchases during the year and (2) accounts payable at the close of the year in order to calculate the actual purchases for the year. However, by decreasing beginning accounts payable petitioner seeks to increase purchases and decrease gross profits. The $16,092.72 in question is the balance at the beginning of 1965 of petitioner's account payable to Topp's. Petitioner insists that the balance in the Topp's account was in the nature of a consignment rather than a payable, and that such balance should therefore not be included in accounts payable. However, petitioner's business records clearly indicate that the Topp's account was a payable, and the testimony adduced by petitioner is not sufficient to meet his burden of overcoming the probative value *135 of those records. The partnership return filed by Jet One Stop for 1964 recorded the Topp's account as a payable; during 1965 credit memoranda totaling more than $12,000 were issued by Topp's to petitioner for returned merchandise; and petitioner's records show he made direct purchases from Topp's in 1965. Petitioner offered no written evidence of any kind to indicate that the Topp's account was other than what it appeared to be - a payable; no consignment agreement of any sort was introduced. We hold that respondent properly included the Topp's account as a payable. In addition to his contentions regarding the computation of business purchases, petitioner makes a more general argument based on the fact that his invoices for 1965 reveal an average sale price per record of 63.86 cents and an average cost per record of 46.7 cents. Petitioner argues on the basis of this data that his gross profit for 1965 could not have exceeded approximately 27 percent of his gross sales, and that respondent's determination must perforce be unreasonable since it results in a gross profit margin of approximately 41 percent. Petitioner further relies on the testimony of a former employee who now operates *136 four businesses similar to his own, and who testified that the average gross profit margin for such businesses is 23 percent. Respondent, on the other hand, argues that petitioner is bound by his chosen accounting system and that he cannot rely on afterthought guided by hindsight to reconstruct his gross profit margin. The Internal Revenue Code requires taxpayers to keep adequate books and records in the interest of precise, accurate, and even-handed administration of the tax laws. Sec. 6001, I.R.C. 1954; see Anson v. Commissioner, 328 F. 2d 703 (C.A. 10, 1964), affirming a Memorandum Opinion of this Court. Also, the respondent is given a great deal of discretion under section 446, I.R.C. 1954, to revise a taxpayer's method of accounting if his books and records do not clearly reflect income. See Herbert Schellenbarg, 31 T.C. 1269, 1277 (1959). These factors, in combination with the presumption that respondent's determination is correct, present an insurmountable obstacle to petitioner's attempt to repudiate his own records and adopt through hindsight an indirect method of computing his gross income. Moreover, petitioner has advanced no direct evidence which *137 would indicate that the records he kept during 1965 did not clearly reflect income, or that respondent's reliance on those records was unreasonable. Therefore, we must hold with respondent on this issue. Decision will be entered under Rule 50. 573